# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BARRY Y.,**[1] | Case No. 3:17-cv-1114-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Lisa R.J. Porter, 5200 S.W. Meadows Rd. Suite 150, Lake Oswego, OR 97035. Of Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Sarah Moum, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Barry Y. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff filed an application for DIB on November 1, 2011, alleging disability beginning on December 29, 2008. AR 96-97. He was born on July 10, 1951, and he was 57 years old as of the alleged disability onset date. He alleged disability due to depression, anxiety, traumatic brain injury, alcohol addiction, memory loss, and balance problems. AR 97. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 156, 164. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), but later asked to withdraw the request for hearing. AR 131. Thus, the ALJ dismissed the request for a hearing. *Id.*

Plaintiff filed another application for DIB on January 11, 2014, alleging disability beginning July 30, 2012. AR 144-45. He was 62 years old as of this alleged disability onset date. He alleged disability due to depression, anxiety, head injury, short term memory loss, balance loss, hand cramping, joint pain, hip and shoulder pain, gout, nerve damage in the left foot toe, constant pain, and constant ringing in both ears. AR 144. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 95, 178. Thereafter, Plaintiff requested a hearing before an ALJ. AR 189. The ALJ found Plaintiff not disabled from July 30, 2012 through December 31, 2012. AR 28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. AR 19. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 30, 2012, through his date last insured of December 31, 2012. AR 19. At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease;

gout; asthma; arthritis of the right hip; and history of subdural hematoma." AR 19. At step three,

the ALJ found that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. AR 21. At step four, the ALJ found that Plaintiff had the RFC to perform

medium work as defined in 20 C.F.R. 404.1567(c), with the additional limitations that Plaintiff

was precluded from climbing ladders and scaffolds, working at unprotected heights, and working

in areas where he would be exposed to dust, fumes, gases, and airborne irritants. AR 22. The

ALJ concluded that Plaintiff was capable of performing his past relevant work as an engineering

manager and business owner. AR 27. Accordingly, the ALJ concluded that Plaintiff was not

under a disability, as defined by the Social Security Act, at any time from July 30, 2012 through

December 31, 2012. AR 28.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that he was not disabled. Plaintiff

argues that the ALJ erred in making that determination by: (A) failing to provide clear and

convincing reasons to discount Plaintiff's subjective symptoms; (B) improperly according great

weight to the state medical consultant's psychological assessment; (C) failing to incorporate

medical findings into Plaintiff's RFC; (D) discounting lay witness testimony; and (E) failing

fully to develop the record to determine the severity of Plaintiff's anxiety.

## A. Plaintiff's Subjective Symptoms

There is a two-step process for evaluating a claimant's testimony about the severity and

limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's decision to discount testimony about subjective symptoms may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount subjective symptoms "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff testified at the hearing that he was unable to work because: (1) he could walk for about 30 minutes at a time in 2012, and stand in place for one to two hours; (2) his back, legs, and hips bothered him if he was in the same position for too long; (3) he had significant concentration and memory problems; (4) he had difficulty using his hands; and (5) he had painful gout flare-ups. AR 43-52. Moreover, Plaintiff stated in a function report that he:

(1) watched TV for most of the day; (2) became more reclusive; (3) bathed once a week and changed his clothes once every two weeks; (4) had difficulty following verbal instructions; and (5) had difficulty handling stress. AR 282-87.

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 24. In applying the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." *Id.* In support of this credibility finding, the ALJ gave three specific reasons: (1) the disparity between Plaintiff's statements and his activities of daily living; (2) Plaintiff's conservative treatment to treat his chronic pain; and (3) the disparity between Plaintiff's statements and the medical evidence. *Id.*

### 1. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."

(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found that Plaintiff's testimony about his chronic pain and depression was inconsistent with his activities of daily living. AR 21, 24. Plaintiff reported that he could complete daily activities including cooking, walking, doing chores, making coffee, checking email, cleaning up, grocery shopping twice a week, doing laundry, and fixing things that are broken. *See* AR 21, 282-84, 680. The ALJ's conclusion that those activities of daily living were inconsistent with Plaintiff's reports of chronic pain, including severe arthritis that prevented him from doing "anything with his hands," is supported by substantial evidence in the record. *See* AR 23, 43.

### 2. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the

intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ discounted Plaintiff's subjective symptoms because, despite his complaints of chronic pain, Plaintiff underwent only conservative treatment. The ALJ noted that while Plaintiff complained that chronic pain significantly limited his ability to sit, stand, walk, and use his hands, he did not pursue an aggressive treatment program. AR 24. Plaintiff reported taking only aspirin as of September 2011, and he reported taking only Indomethacin, a non-steroidal anti-inflammatory drug, as of April 2012. AR 24, 43, 680-81. Plaintiff, however, underwent aggressive treatment beyond simply taking oral medication. He had a right hip replacement in 2014, and he had several injections to attempt to destroy a nerve in his foot without success. AR 680, 839. Thus, the ALJ erred in finding that Plaintiff only underwent conservative treatment.[2] *See Carmickle*, 533 F.3d at 1162. This error, however, is harmless because the ALJ provided other clear and convincing reasons to discount Plaintiff's subjective testimony. *See Batson*, 359 F.3d at 1197 (holding that the ALJ's decision to discount testimony about subjective

---

[2] The Commissioner states that Plaintiff waived any argument addressing the ALJ's reasoning about conservative treatment because Plaintiff did not address the argument in his opening brief, citing to *Bray*, 554 F.3d at 1226 n.7. In *Bray*, however, the Ninth Circuit did not establish any mandatory rule. The Ninth Circuit articulated in *In re E.R. Fergert, Inc.*, that an argument must be raised sufficiently early for the trial court to rule on it. 887 F.2d 955, 957 (9th Cir. 1989). The Ninth Circuit has also noted that *ordinarily* it does not consider arguments not raised in an opening brief. *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003). This Court sometimes has declined to consider arguments raised for the first time in a reply brief, because that does not allow the responding party a fair opportunity to respond to the new argument, and sometimes allowed the responding party to file a sur-response. The issue of conservative treatment, however, was first raised by the Commissioner in the response brief and was not first raised by Plaintiff in his reply brief. Thus, the Commissioner had the opportunity to argue this issue and the Court considers Plaintiff's points in his reply on the merits.

symptoms may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld).

### 3. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883.

The ALJ found that Plaintiff's testimony was inconsistent with the objective medical evidence. AR 23. This conclusion is supported by substantial evidence in the record. For example, as the ALJ specifically noted, Plaintiff's testimony about his back pain did not comport with Dr. Donald D. Ramsthel's examination. AR 23. The ALJ explained that while Plaintiff reported pain in his low back and lumbar area, Dr. Ramsthel's examination revealed that his range of motion was within normal limits, he had 5/5 strength bilaterally, and he was well muscled with good bulk and tone. AR 23, 680, 682-83. That evidence is inconsistent with Plaintiff's statement that his back would "just get destroyed" if he stood in one place for too long. AR 43.

As another example, Plaintiff's testimony about his concentration and memory limitations was inconsistent with the objective medical evidence. Plaintiff testified that he was unable to recall simple instructions and previous discussions, and he could only pay attention for five to ten minutes at a time. AR 281, 286. Dr. Daniel L. Scharf, however, noted that, during his neurological testing, "[Plaintiff] was able to understand and remember instructions with sustained concentration and attention." AR 675.

Plaintiff argues that the objective medical evidence supported his testimony about his memory limitations because he only scored in the fifth percentile on a logical memory test

conducted by Dr. Scharf. AR 673. Dr. Scharf, however, noted that Plaintiff's test scores, when assessed in combination, only indicated "mild difficulties" with memory for complex verbal information. AR 673-74. Plaintiff also argues that his performance on Dr. Ramsthel's examinations suggest he had severe memory limitations because he was unable to spell "world" backwards and count backwards from 100 by sevens. Dr. Ramsthel, however, opined that Plaintiff's memory appeared to be "good." AR 681. Thus, it is a rational reading of the record that the ultimate conclusions of Drs. Scharf and Ramsthel did not support significant limitations in memory, concentration, and attention.

Looking at the entire medical record, substantial evidence supports the ALJ's conclusion that the objective medical evidence was inconsistent with Plaintiff's claimed limitations. Thus, this was a clear and convincing reason to discount Plaintiff's subjective testimony and an appropriate factor for the ALJ to consider in weighing Plaintiff's subjective testimony.

## B. Medical Opinion Evidence Regarding Mental Impairments

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

When evaluating a mental impairment, it is error for the ALJ to pick out a few isolated instances of improvement over a period of months and years and treat them as a basis for concluding that a claimant is not capable of working. *Garrison*, 759 F.3d at 1018. Moreover, reports must be interpreted with an understanding of the patient's overall well-being and the

nature of his or her symptoms. *Id.* at 1017. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace. *Id.*

The ALJ accorded "great weight" to the psychological assessment completed by Dr. Richard S. Winslow, the reviewing State medical consultant, because Dr. Winslow's findings were consistent with the medical evidence. AR 26; *see* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). Dr. Winslow reviewed the medical record and determined that Plaintiff had (1) no limitation in activities of daily living; (2) no limitation in social functioning; (3) mild limitation in concentration, persistence, or pace; and (4) no repeated episodes of decompensation. AR 138. The ALJ ultimately agreed with Dr. Winslow on each of those four findings. AR 21. Accordingly, the ALJ did not include any mental limitations in Plaintiff's RFC. AR 22.

Plaintiff contends that the ALJ erred in providing great weight to Dr. Winslow's assessment and, accordingly, omitting mental limitations from Plaintiff's RFC. Specifically, Plaintiff contends that Dr. Winslow's assessment was not consistent with the record evidence because: (1) Plaintiff's depression limited his activities of daily living; (2) Plaintiff's depression limited his social functioning; and (3) Plaintiff's depression and memory loss limited his concentration, persistence, or pace. Substantial evidence in the record, however, supports the ALJ's conclusion.

First, the record evidence was consistent with Dr. Winslow's finding that Plaintiff's depression did not limit his activities of daily living. Plaintiff argues that his depression limited his activities of daily living because the record demonstrates that he feels "paralyzed" when

depressed, can "go days without hygiene," and has "feelings of worthlessness [and] hopelessness." Plaintiff's record, however, does not "demonstrate" those allegations; they are merely Plaintiff's subjective statements. The ALJ may reject a plaintiff's statements about the severity of his or her symptoms if the ALJ offers specific, clear, and convincing reasons for doing so. *Lingenfelter*, 504 F.3d at 1036. As discussed above, the ALJ has done so and thus Plaintiff's subjective statements regarding his limitations are not conclusive evidence in the record. Moreover, Plaintiff's daily living activities did not comport with his testimony about the severity of his depression. Plaintiff indicated that he completed certain activities of daily living including cooking, doing chores, making coffee, checking email, grocery shopping twice a week, doing laundry, and fixing things that are broken. *See* AR 21, 282-84, 680. Those activities were not merely a few isolated instances of improvement over a period of months and years; Plaintiff performed many of them on a regular basis. *Id*.

The record evidence was also consistent with Dr. Winslow's finding that Plaintiff had no limitation in social functioning. *See* AR 21. Dr. Scharf noted that Plaintiff meets with a group of friends approximately once a week and attends AA meetings approximately one to three times per week. AR 21, 671. Moreover, Plaintiff reported that he had no problems getting along with family, friends, neighbors, or others. AR 286.

Next, the record evidence was consistent with Dr. Winslow's finding that Plaintiff had only mild limitations in concentration, persistence, or pace. As discussed above, Plaintiff's testimony about his difficulty concentrating and recalling simple instructions was inconsistent with the medical evidence.

Plaintiff next contends that by providing "great weight" to the State medical consultant's psychological assessment, the ALJ contravened C.F.R. § 404.1527, regarding the weight

physicians should be given according to the time they have spent with the claimant. The time a

physician spends with a client, however, is not the only factor in determining the weight

accorded to his or her findings. An ALJ may also consider consistency of the medical findings

with other medical evidence, which the ALJ did here. *See* AR 26; 20 C.F.R. § 416.927(c). Thus,

the ALJ did not err in according great weight to the State medical consultant's psychological

assessment and adopting his findings.

## C.  Incorporation of Medical Evidence into RFC

The Commissioner concedes that, although the ALJ purportedly accorded great weight to

Dr. Ramsthel's opinion, the ALJ did not properly incorporate Dr. Ramsthel's opinion into the

RFC. The ALJ included in the RFC a limitation that Plaintiff could stand for six hours in an

eight-hour workday. AR 22. Dr. Ramsthel, however, opined that Plaintiff could only stand for

two hours in an eight-hour workday. AR 683. According to Plaintiff, the ALJ also failed fully to

incorporate Dr. Ramsthel's limitations when the ALJ included in the RFC that Plaintiff could

perform work at the medium exertional level. AR 22. Dr. Ramsthel found that Plaintiff could

carry 50 pounds infrequently and 20-30 pounds frequently. AR 683. Dr. Ramsthel also found

that Plaintiff could walk for about four hours of an eight-hour workday and sit for as much time

as needed. *Id.* Plaintiff contends that those findings, as well as Dr. Ramsthel's finding regarding

standing, are inconsistent with a conclusion that Plaintiff could not perform more than medium-

exertion work.

Ultimately, any error in failing accurately to incorporate all of Dr. Ramsthel's exertional

limitations into Plaintiff's RFC was harmless because it would not have affected the ALJ's step-

four finding. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that an ALJ's

error is harmless if it is "inconsequential to the ultimate nondisability determination"). Even if

Dr. Ramsthel's findings are not consistent with the ALJ's conclusion that Plaintiff could perform

medium-exertion work, they are consistent with the ALJ's ultimate conclusion that Plaintiff could perform his past relevant work, which was sedentary. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Plaintiff's past relevant work was as an engineering manager and a business owner, both of which were sedentary jobs. *See* AR 27. Because they were sedentary jobs, they did not require the ability to stand and walk for a total of more than two hours per eight-hour workday or lift more than ten pounds. SSR 96-9p. Thus, Dr. Ramsthel's findings were consistent with the ALJ's step-four finding that Plaintiff could perform his past relevant work.

Plaintiff also contends that the ALJ failed to incorporate the following medically determinable impairments into his RFC: (1) Plaintiff's severe end-stage arthritis of his right hip; (2) his need for assistance with stairs; (3) his limitation of motion and limp; and (4) his right shoulder arthritis. The ALJ, however, considered Plaintiff's arthritis in his right hip, need for assistance with stairs, limitation of motion, and limp. He noted that Plaintiff had surgery to address his "severe right hip pain" in 2014, and that Plaintiff's hip pain had "interfered with his ability to go up and down stairs." AR 24. Accordingly, in the RFC, the ALJ noted that Plaintiff could climb stairs only "occasionally" and could only sit and stand for limited periods of time. AR 22.

Moreover, the ALJ considered Plaintiff's right shoulder arthritis. He noted that an x-ray of Plaintiff's right shoulder found "mild to moderate right-shoulder osteoarthritis and he was noted as doing fairly well with range of motion and function." AR 20. Accordingly, the ALJ accounted for Plaintiff's shoulder arthritis by noting in his RFC that he had a limited ability to carry more than 25 pounds. AR 22. An RFC is the *maximum* that a claimant can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. §§ 404.1545. The ALJ's conclusion is supported by substantial evidence in the record.

**D. Weight Accorded to Lay Witness Testimony**

Plaintiff next contends that the ALJ erred by discounting Plaintiff's daughter's lay witness testimony. Plaintiff's daughter Ms. Adrienne Freese, with whom Plaintiff lives, submitted a function report stating that (1) Plaintiff's mental health problems include a lack of motivation, self-isolation, paranoia, and emotional instability; (2) Plaintiff's depression sometimes causes him to stay in bed for a week and go days without hygiene; (3) Plaintiff watches television in bed for most of the day; (4) Plaintiff is socially isolated and has difficulty focusing on conversations; and (5) Plaintiff's arthritis and gout cause limited mobility and constant pain. AR 302-08.

The ALJ discounted Ms. Freese's statements for the following reasons.

> As Ms. Frase [sic] is not medically trained to make exacting observations as to the date, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms, the accuracy of her statements are questionable. Moreover, by virtue of the relationship as daughter to claimant, Ms. Frase [sic] cannot be considered a disinterested party whose statements would not tend to be colored by affection for the claimant.

AR 27.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

"[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19. A claimant's family member's alleged bias cannot be grounds for rejecting his or her testimony. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). To the contrary, testimony from lay witnesses who see claimant every day is of particular value, and such witnesses will often be family members. *Id.*

In *Smolen v. Chater*, the ALJ rejected testimony given by family members because they were "understandably advocates, and biased." 80 F.3d 1273, 1289 (9th Cir. 1996). The Ninth

Circuit found that this was not a germane reason sufficient to reject such testimony. *Id.* In

reaching this conclusion, the court noted:

> [T]he same could be said of any family member who testified in
> any case. The fact that a lay witness is a family member cannot be
> a ground for rejecting his or her testimony. To the contrary,
> testimony from lay witnesses who see the claimant every day is of
> particular value; such lay witnesses will often be family members.

*Id.* (citation omitted); *see also Dodrill*, 12 F.3d at 919 ("An eyewitness can often tell whether

someone is suffering or merely malingering. . . . [T]his is particularly true of witnesses who view

the claimant on a daily basis.").

The ALJ erred by discounting Ms. Freese's statements because she was not a

"disinterested" party. *See Smolen*, 80 F.3d at 1289; *see also Regennitter*, 166 F.3d at 1298. The

ALJ also erred by discounting Ms. Freese's testimony because she was not "medically trained to

make exacting observations." AR 27. Ms. Freese's lack of medical training did not disqualify her

from testifying as to Plaintiff's symptoms such as his forgetfulness, his limp, his joint pain, his

limited mobility, his balance problems, and his difficulty with concentration. *See Dodrill*, 12

F.3d at 918-19; *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that lay

witness testimony as to a plaintiff's symptoms is competent evidence).

These errors by the ALJ, however, were harmless. Ms. Freese's testimony is similar to

Plaintiff's testimony, which the ALJ validly discounted by pointing to Plaintiff's activities of

daily living and objective medical evidence. Accordingly, the ALJ's reasons for discounting

Plaintiff's testimony also provide a reasonable basis for discounting Ms. Freese's testimony. *See

Molina*, 674 F.3d at 1118-19.

## E.  Failure to Fully Develop the Record

The ALJ has a duty to "fully and fairly develop the record and to assure that the

claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713

F.2d 441, 443 (9th Cir. 1983)). If the claimant is unrepresented, represented by a lay person, or suffering from a mental illness rendering him or her unable to protect his or her own interests, then "the ALJ must be especially diligent in exploring for all of the relevant facts." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (quoting *Smolen*, 80 F.3d at 1288).

Plaintiff argues that the ALJ failed to fulfill his duty to conduct an appropriate inquiry into Plaintiff's anxiety. The ALJ, however, had sufficient evidence to conclude that Plaintiff did not suffer from medically determinable anxiety. *See* AR 20, 22. Dr. Scharf commented on Plaintiff's anxiety, noting that "it appears that his depression and anxiety are closely related to his alcohol dependence." AR 672. Yet Dr. Scharf did not diagnose Plaintiff with anxiety. Plaintiff has been treated for his mental health problems and been diagnosed with depression. *See, e.g.*, AR 574-630. As the ALJ noted, however, Plaintiff has never been formally diagnosed with anxiety. AR 20; *see Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (affirming the ALJ's finding of no medically determinable impairment at step two when there was no definitive diagnosis). Thus, the ALJ did not err in failing to conduct a further inquiry into Plaintiff's anxiety.

Moreover, Plaintiff waived his objection to the ALJ's failure to develop the record because Plaintiff was represented by an attorney at his administrative hearing who did not object at the hearing to the ALJ's failure to develop the record. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that represented plaintiffs are required to raise all issues and evidence at their administrative hearings in order to preserve them on appeal).

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 7th day of August, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge